# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | |
|---|---|
| **ROGER JOHNSON,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) **Case No.: 5:09-CV-0043-VEH** |
| | ) |
| **MICHAEL J. ASTRUE,** | ) |
| **Commissioner,** | ) |
| **Social Security Administration,** | ) |
| | ) |
| **Defendant.** | ) |

## <u>MEMORANDUM OPINION</u>

Plaintiff Roger Johnson ("Mr. Johnson") brings this action pursuant to 42 U.S.C. §§ 216(i) and 223 of the Social Security Act. He seeks review of a final adverse decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner" or "Secretary"), who denied his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").[1] Mr. Johnson timely pursued and exhausted his administrative remedies available before the Commissioner. The case is ripe for review pursuant to 42 U.S.C. § 405(g),

---

[1] In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

§ 205(g) of the Social Security Act.[2]

## FACTUAL AND PROCEDURAL HISTORY

Mr. Johnson was a 46-year-old male at the time of his hearing before the administrative law judge (hereinafter "ALJ"). (Tr. 31). He has a limited education, and the last grade that he finished was the ninth. (Tr. 34). Mr. Johnson never obtained a GED. (*Id.*).

Mr. Johnson's past work experiences include sawing in a lumber yard, installing and servicing for a sign company, and driving a truck for a lumber yard. (Tr. 35-36). Mr. Johnson claims disability beginning on April 2, 2004. (Tr. 8). Mr. Johnson suffers from gout; lumbar degenerative disc disease; gastroesophageal reflux disease; cognitive disorder; major depressive disorder; and borderline intellectual functioning. (Tr. 10).

Mr. Johnson protectively filed a Title II application for a period of disability and DIB and a Title XVI application for SSI on April 10, 2006. (Tr. 8). The DIB and SSI claims were denied initially on August 24, 2006. (*Id.*). Mr. Johnson timely filed a request for a hearing on September 11, 2006. (*Id.*). The hearing before the ALJ was held on August 4, 2008. (Tr. 8, 27). The ALJ concluded Mr. Johnson was not

---

[2] 42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI.

disabled as defined by the Social Security Act and denied both of his applications on August 26, 2008. (Tr. 8-17).

Mr. Johnson filed a request for review on September 3, 2008. (Tr. 4). On November 10, 2008, the Appeals Council denied review, which resulted in the ALJ's decision being the final decision of the Commissioner. (Tr. 1).

On January 9, 2009, Mr. Johnson filed his complaint with this court asking for review of the ALJ's decision. (Doc. 1). This court has carefully considered the record, and for the reasons stated below, affirms the Commissioner's denial of benefits.

## **STANDARD OF REVIEW**

The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales,* 402 U.S. 389, 390 (1971); *McRoberts v. Bowen,* 841 F.2d 1077, 1080 (11th Cir. 1988); *Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1983); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth*, 703 F.2d at 1239. This court will determine that the ALJ's opinion is supported by substantial evidence if it finds "such relevant evidence as a reasonable person would accept as

adequate to support a conclusion." *Id*. Substantial evidence is "more than a scintilla, but less than a preponderance." *Id.*

## **STATUTORY AND REGULATORY FRAMEWORK**

To qualify for disability benefits and establish his entitlement for a period of disability, the claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3] The Regulations define "disabled" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

---

[3] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, as current through October 19, 2009.

>    (1)   whether the claimant is currently employed;
>    (2)   whether the claimant has a severe impairment;
>    (3)   whether the claimant's impairment meets or equals an impairment listed by the Secretary;
>    (4)   whether the claimant can perform her past work; and
>    (5)   whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to former applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel,* 189 F.3d 561 (7th Cir. 1999); *accord, McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps one and two, she will automatically be found disabled if she suffers from a listed impairment.  If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the Secretary to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord*, *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).  The Commissioner must further show that such work exists in the national economy in significant numbers.  *Foote*, 67 F.3d at 1559.

## **FINDINGS OF THE ADMINISTRATIVE LAW JUDGE**

The ALJ found Mr. Johnson had not engaged in substantial gainful activity since the alleged onset of his disability on April 2, 2004.  (Tr. 10). Thus, the claimant satisfied step one of the five-step test. 20 C.F.R. § 404.1520(b).  Under step two, the ALJ concluded that "[t]he claimant has the following severe impairments:  gout;

lumbar degenerative disc disease; gastroesophageal reflux disease; cognitive disorder; major depressive disorder; and borderline intellectual functioning." (Tr. 10 (citations omitted)).[4]  Accordingly, the ALJ concluded that Mr. Johnson satisfied the second step of the sequential disability evaluative process.  20 C.F.R. § 404.1520(c).

At step three, the ALJ determined that Mr. Johnson did not have an impairment or a group of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 11).  Mr. Johnson does not dispute this finding on appeal.

The ALJ evaluated Mr. Jonhson's residual functional capacity at step four, and the claimant was found to have the ability to "sustain an eight-hour workday at the light exertional level" "[w]ith no more than moderate pain" with additional limitations. (Tr. 13).  The ALJ listed Mr. Johnson's additional limitations to include: "occasional but no repetitive bending[;]" "complet[ing] simple tasks without the need for special supervision or more than usual and customary rest breaks[;]" "flexible daily schedule and a well-spaced work setting;" "non-intense interaction with co-workers, supervisors, and the public" "supervision should be tactful and supportive[;]" "[c]hanges in the work environment or work expectations should be

---

[4] The ALJ also noted that Mr. Johnson suffers from hypertension, but concluded that the condition was not severe because it "does not result in any work-related limitations."  (Tr. 10).

introduced gradually[;]" and "[ability to] set simple, short-term, realistic work goals, but will need assistance with those more long-term and complex." (Tr. 13). Against this backdrop, the ALJ determined that Mr. Johnson suffered from impairments that prevented him from performing past relevant work. (Tr. 16).

Because of the ALJ's finding that Mr. Johnson was unable to perform past relevant work, it was necessary to continue to step five of the sequential analysis. (Tr. 16-17). Factoring in the Medical-Vocational Guidelines as a framework and relying upon testimony from the vocational expert, the ALJ concluded that Mr. Johnson was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (Tr. 17). Such possible occupations included hand packager, production inspector, and ticket taker. (Tr. 17). Accordingly, the ALJ concluded Mr. Johnson was not disabled as defined by the Social Security Act, at any time from April 2, 2004, through August 26, 2008, the date of the ALJ's decision, and denied both his DIB and SSI claims. (*Id.*).

## ANALYSIS

The court can reverse a finding of the Secretary if it is not supported by substantial evidence. 42 U.S.C. § 405(g). "This does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672

F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)).[5]

In this appeal, Mr. Johnson contends that the ALJ erred in his application of the pain standard. (Doc. 9 at 4). More specifically, Mr. Johnson maintains that "[t]he ALJ's reasons for discounting the Plaintiff's pain testimony are not supported by the evidence as a whole" and that "[t]he activities of daily living recited by the ALJ do not support a finding that the Plaintiff's pain testimony is not true." (*Id.* at 6, 7). Mr. Johnson further complains that "the ALJ erred in adopting the assessment of the state agency psychological consultant regarding the Plaintiff's ability to respond to the mental demands of work" because "Dr. Meneese never examined the Plaintiff and did not have access to the numerous treatment records from the Mental Health Center of Madison County." (*Id.* at 8 (citations omitted)).

**I.     THE ALJ EVALUATED THE CREDIBILITY OF MR. JOHNSON'S SUBJECTIVE COMPLAINTS OF DISABLING PAIN UNDER THE APPROPRIATE LEGAL STANDARD, AND THE DECISION IS SUPPORTED BY SUBSTANTIAL EVIDENCE.**

In order to satisfy the Eleventh Circuit pain standard, Mr. Johnson must prove "evidence of an underlying medical condition and (1) objective medical evidence that

---

[5] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such severity that it can reasonably be expected to give rise to the alleged pain." *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986) (citing *Hand v. Heckler*, 761 F.2d 1545, 1548 (11th Cir. 1985)). Relatedly, "[w]hile both the regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself." *Elam v. Railroad Retirement Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991) (emphasis added).

Here the ALJ determined that Mr. Johnson had not met his burden. More specifically, the ALJ explained:

> Although the claimant meets part one of this standard, with evidence of underlying medical conditions, he fails to meet part two. Medical evidence shows the claimant has underlying medical conditions, but it does not support his allegations of severe and chronic pain and limitation of function to the degree that it would preclude the performance of all substantial gainful activity. These allegations are inconsistent with the claimant's daily living activities including driving, shopping, and watching television.

(Tr. 15).

In *Wilson v. Barnhart*, the Eleventh Circuit reversed the district court's decision that the ALJ improperly applied the pain standard and found that the ALJ's decision was supported by substantial evidence because "the ALJ made a reasonable

9

decision to reject Wilson's subjective testimony, articulating, in detail, the contrary evidence as his reasons for doing so." *Wilson v. Barnhart*, 284 F.3d 1219, 1226 (11th Cir. 2002). As the Eleventh Circuit discussed the ALJ's adequate credibility findings in *Wilson*:

> Moreover, the ALJ specifically enunciated the following findings:
>
> On or before December 31, 1987, [the date last insured,] there is no objective clinical evidence of a condition which could reasonably be expected to produce the level of pain, lack of balance, numbness, weakness, lack of bowel control, fatigue, frequent need to eat, frequent need for bowel movements, headaches, need for additional rest during the day, or other symptoms which [Wilson] alleges precluded him from working. <u>Such allegations are also inconsistent with activities of daily living, limited use of pain medication and effectiveness of treatment, and therefore are not found credible to the extent claimant was precluded from working</u>.
>
> Substantial evidence in the record supports the ALJ's finding, as the medical and other evidence simply was not consistent with Wilson's alleged disabling pain. The evidence shows that from December 1986, a year prior to Wilson's date last insured, through 1992, Wilson made visits for regular vitamin B12 shots, received treatment for a rash, had moles removed, and had an isolated instance of testicular enlargement. <u>It does not appear that Wilson complained of pain associated with the injuries received from his accident any time past his date last insured. Thus, Wilson cannot establish that he continuously met the pain standard from on or before December 31, 1987, his date last insured, to within one year of his application date</u>.

*Id.*, 284 F.3d at 1226 (emphasis added).

Akin to the standard set forth in *Wilson*, the ALJ's negative credibility finding in this instance is supported by substantial evidence contained in the record. For example, during the hearing before the ALJ Mr. Johnson confirmed that "he drives; does yard work with his wife; goes shopping at Wal-Mart and grocery stores with his wife; watches television; and goes for walks with his wife on occasion." (Doc. 10 at 9 (citing Tr. 32, 39)).

Also bolstering the ALJ's adverse credibility determination are the various positive pain management reports that Mr. Johnson made to Dr. Aggarwal. For example, on October 26, 2006, Mr. Johnson indicated to Dr. Aggarwal that he was "happy with his pain control and quality of life." (Tr. 283). Subsequently, on February 15, 2007, Mr. Johnson advised Dr. Aggarwal that he "note[d] continued benefit with his medicines[,]" "deni[ed] any side effects[,]" and "ha[d] improved sleep." (Tr. 282).

Mr. Johnson made similar statements to Dr. Aggarwal during his September 2007 visit, confirming that his pain was under control. (Tr. 280). Mr. Johnson additionally "denie[d] any problems." (*Id.*). Therefore, Dr. Aggarwal's notes about Mr. Johnson's progress confirm the overall effectiveness of his pain management regimen and further undermine Mr. Johnson's position that his subjective symptoms

cannot be properly discounted by the ALJ <u>solely</u> on the basis of his reported activities of daily living.[6]

Consistent with the foregoing analysis, the ALJ articulated specific and sufficient reasons for doubting Mr. Johnson's subjective testimony, and substantial evidence supports his negative finding as to Mr. Johnson's credibility. Alternatively, even if the ALJ erred in not providing adequate details in his decision for discrediting Mr. Johnson, such error was harmless because the record on the whole, including in particular Mr. Johnson's conflicting statements about the severity of his pain versus the positive pain management results he experienced under Dr. Aggarwal's supervision, provides substantial evidence for discounting Mr. Johnson's subjective pain symptoms.

---

[6] Relying upon *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997), Mr. Johnson argues in his brief that Mr. Johnson's limited activities of daily living expressly relied upon by the ALJ in his decision are insufficient grounds to reject his credibility because "[d]isability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity." (Doc. 9 at 7). However, the court does not need to reach this narrow issue because, in this instance, other evidence (*i.e.*, Dr. Aggarwal's treatment records, which post-date Mr. Johnson's 2004, 2005, and early 2006 complaints about pain (*see, e.g.*, Doc. 9 at 6), contained in the record and unchallenged by Mr. Johnson) substantiates the ALJ's negative credibility finding.

## II. THE ALJ DID NOT ERR IN ADOPTING THE ASSESSMENT OF THE STATE AGENCY PSYCHOLOGICAL CONSULTANT REGARDING MR. JOHNSON'S ABILITY TO RESPOND TO THE MENTAL DEMANDS OF WORK.

The court also concludes that the ALJ did not commit legal error in adopting the assessment of Dr. Meneese, the state agency psychological consultant, regarding Mr. Johnson's ability to respond to the mental demands of work. As summarized by the ALJ, Dr. Meneese:

> [F]ound that the claimant can maintain attention sufficiently to complete simple tasks without the need for special supervision or more than usual and customary rest breaks. He found that the claimant needs a flexible daily schedule and a well-spaced work setting. He found that the claimant can tolerate non-intense interaction with co-workers, supervisors, and the public, and he noted that supervision should be tactful and supportive. Dr. Meneese found that changes in the work environment or work expectations should be introduced gradually. He found that the claimant can set simple, short-term, realistic work goals, but will need assistance with those more long-term and complex.

(Tr. 11).

Mr. Johnson challenges Dr. Meneese's opinion as a "direct contradiction to those treatment notes from the Mental Health Center which confirm the debilitating nature of the Plaintiff's mental impairment" (Doc. 9 at 8-9) and deficient because Dr. Meneese did not have the benefit of those mental health records when he conducted his paper review. (Doc. 9 at 8). In contrast, when deciding to attribute significant weight to Dr. Meneese's opinion about Mr. Johnson's mental vocational abilities, the

ALJ explained that it was "consistent with the other medical evidence of record, including treatment notes from the Mental Health Center." (Tr. 16 (emphasis added)). As the ALJ described Mr. Johnson's records from the Mental Health Center:

> Mental Health Center of Madison County provided records from 2006 and 2008 (Exhibits 7F, 16F, and 19F). The claimant was diagnosed with major depressive disorder and treated with medication and therapy. Treatment notes of April 2007 show that the claimant was "doing well" and was better with medication.

(Tr. 11).

The court has studied Mr. Johnson's treatment records from the Mental Health Center. (Tr. 215-20; 256-78; 287-65). While the records from 2006 illustrate Mr. Johnson's many difficulties in daily functioning (*see, e.g.*, Tr. 215-20, 261-62, 271), during 2007 his depressive condition and overall functioning improved through medication. For example, in February of 2007, Mr. Johnson reported, "I am doing OK" and his physician recorded that his "[d]epression [wa]s some better[.]" (Tr. 267).

On June 19, 2007, Mr. Johnson commented that while he still had "trouble memorizing things," he thought that the "medication [wa]s helping him." (Tr. 258). Relatedly, on this same date, in addressing Mr. Johnson's progress toward his goals of "[p]sychiatric stability; decreased depressed mood and improve functioning," the therapist recorded that the "[c]lient [wa]s making a fair progress." (*Id.*).

14

In August 2007, Mr. Johnson's physician indicated that he was "[d]oing well" and checked a box for him to "[c]ontinue [with] [p]resent [m]eds[.]" (Tr. 263). Subsequently, as of September 11, 2007, Mr. Johnson's shared that "Aricpt [wa]s helpful w/ his memory." (Tr. 256). Mr. Johnson's goals included to "[m]aintain psychiatric ability" and to "[d]ecrease depressed mood." (*Id.*). Mr. Johnson's new therapist indicated that Mr. Johnson was making "[p]rogress on both goals a.e.b [*i.e.*, as evidenced by] cl report & level of productive functioning[.]" (Tr. 256).

Mr. Johnson's treatment records from 2008 similarly report "[p]rogress on both goals" and reflect no major setbacks in his overall mental condition. (*See, e.g.*, Tr. 287, 288, 291). Therefore, consistent with the foregoing evidence, the ALJ articulated a sufficient rationale for adopting Dr. Meneese's opinion about Mr. Johnson's mental limitations as that rationale is consistent with Mr. Johnson's documented improved mental status as a result of the treatment he received at the Mental Health Center.

## **CONCLUSION**

Based upon the court's evaluation of the evidence in the record and the submissions of the parties, the court finds that the Commissioner's final decision is supported by substantial evidence and applies the proper legal standards. Accordingly, the decision of the Commissioner will be affirmed by separate order.

**DONE** and **ORDERED** this the 3rd day of February, 2010.

                                                                    *[signature]*
                                                                    **VIRGINIA EMERSON HOPKINS**
                                                                    United States District Judge